UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------- x
                                                   :
ROBERT P. CORTESE,                                 :
on behalf of himself and                           : Civil Action No. _____
similarly situated employees,                      :
                                                   :
                Plaintiff,                         : INDIVIDUAL AND COLLECTIVE-
                                                   : ACTION COMPLAINT
                                                   :
         v.                                        :
                                                   : Jury Trial Demanded
PPG ARCHITECTURAL                                  :
COATINGS N.A.,                                     :
                                                   : Electronically Filed
                Defendant.                         :
-------------------------------------------------- X
```

### INDIVIDUAL AND COLLECTIVE/CLASS ACTION COMPLAINT

### Nature of the Action, Jurisdiction, and Venue

1. This is an individual and collective action under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207(a), and an individual and class action under the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. §§ 333.104(c) & 333.113, to recover damages for unpaid overtime compensation.

2. Jurisdiction of this court is invoked under 28 U.S.C. § 1331 and, for the supplemental state claim, 28 U.S.C. § 1367(a).

3. The actions and policies alleged to be unlawful were committed in and around Cranberry Township, Pennsylvania, where Plaintiff worked and where Defendant regularly conducts business. This action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

## Parties

4. **Plaintiff Robert P. Cortese** resides in Baldwin Township, Pennsylvania. Plaintiff worked for Defendant PPG Architectural Coatings N.A. from March 2004 until on or about October 12, 2017.

5. **Defendant PPG Architectural Coatings N.A.** is a division of PPG Industries, Inc. Defendant develops, manufactures, and sells paints and stains to homeowners and professionals around the country. Defendant maintains its principal place of business at 400 Bertha Lamme Drive, Cranberry Township, PA 16066.

## Statement of Claims

6. Defendant employed Plaintiff from in or about March 2004 until on or about October 12, 2017.

7. Defendant hired Plaintiff for the position of Technical Service Representative in the Technical Service Center of the Architectural Division at Defendant's Pittsburgh, PA, office in March 2004.

8. In or about 2009 Plaintiff and his department moved to Defendant's new office location in McCandless, PA.

9. Plaintiff's title and duties remained the same at the McCandless office as at the Pittsburgh office.

10. In 2014, Plaintiff and his department moved to Defendant's new Cranberry Township, PA, office, and Plaintiff was given the title of Senior (Sr.) Technical Advisor.

11. Plaintiff's duties remained the same at the Cranberry office as at the McCandless office: only the job title changed.

12. Plaintiff remained in this position until he was terminated on or about October 12, 2017.

13. Plaintiff reported to the Technical Advice Supervisor at the Cranberry Township facility, and that supervisor reported to the Technical Advice Manager.

14. From the time he was first hired in 2004 until he was terminated in October 2017 Plaintiff's primary duty was to assist customers and PPG account representatives in answering questions and resolving issues about the use of PPG paints and paint products.

15. These products included: Olympic Paints; Liquid Nails; Glidden Paints; Porter Paints; Pittsburgh PPG Paints; Sikkens coatings; and, Deft Lacquer and Stain.

16. Plaintiff performed these duties mostly from the PPG office where he was assigned, with some work also performed from his home after regular office hours or on the weekends.

17. Plaintiff performed these duties via telephone and e-mail mostly.

18. These duties related directly to the employer's products, the performance of these products and the customer's satisfaction with these products.

19. These duties were not directly related to management policies or general business operations.

20. Moreover, Plaintiff's primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

21. Rather, Plaintiff's primary duties mostly involved the application of well-established techniques, procedures or standards described in manuals and other sources provided by PPG to Plaintiff.

22. Plaintiff's primary duty also did not require advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual

instruction.

23. Rather, Plaintiff was only required to acquire and apply knowledge about PPG's products that was available from internal PPG documents (manuals, specifications, written updates) and from inquiring with internal PPG sources (like PPG's engineers and paint developers).

24. Plaintiff supervised <u>no one</u>.

25. Defendant paid Plaintiff an annual salary that began at about $45,000 and rose steadily until he was terminated to $62,676.

26. Plaintiff was scheduled to work an eight-and-a-half-hour shift each day.

27. Plaintiff worked five shifts per week, so he was regularly scheduled to work in excess of forty hours per week.

28. The eight-and-a-half hours shift ostensibly included a thirty-minute lunch break each day.

29. Plaintiff, however, almost always ate lunch while working at his desk.

30. Plaintiff rarely, if ever, took a 30-minute uninterrupted lunch break.

31. Management knew Plaintiff rarely took an uninterrupted lunch break.

32. Management knew this from the personal observations of Plaintiff's managers and/or from the electronic records of Plaintiff's work, e.g., phone records, e-mails, computer log records.

33. Plaintiff spent about 85-90% of each shift on the phone and/or responding to e-mails.

34. Plaintiff was responsible for answering calls/inquiries placed to Defendant's toll-free

number and/or technical support website by homeowners and professionals who had purchased Defendant's paints and stains.

35. The customers who made the inquiries included everyday consumers, dealers that carried Defendant's products, employees who worked at retail stores owned and operated by Defendant, and employees from large commercial retail stores such as Lowe's Home Improvement, The Home Depot and Menards.

36. The typical inquiry sought guidance on how best to apply the products, advice about how to tint Defendant's paints, and on fixing botched paint jobs.

37. Plaintiff answered the questions he was able to answer based on the materials provided to him by PPG and based on his experience in the job, and when he could not answer a customer's question he sought guidance from the Technical Advice Supervisor (his boss).

38. Between April 2004 and April 2014, Plaintiff and his colleagues (other Technical Service Representatives/Technical Advisors) were permitted to follow written guidelines to issue refunds up to $250 or ten gallons of paint without a "General Release" form.

39. To offer a larger refund (greater than $250), Plaintiff was required to have a "General Release" form signed by the customer and signed by a Department Supervisor.

40. In April 2014 Defendant changed its guidelines and policies to allow Plaintiff and his colleagues (other Technical Service Representatives/Technical Advisors) to offer refunds up to $500 or fifteen gallons of paint without first seeking management approval.

41. This policy was then changed again by management in 2016 reverting to the $250 limit on Plaintiff's (and the other Technical Service Representatives/Technical Advisors') authority.

42. Plaintiff received complaints about Defendant's products each day, and in the summer months (between March and September) Plaintiff processed about twenty to thirty-five complaints per day.

43. Each time Plaintiff processed a complaint, Plaintiff was required to enter customer information in the "CAIR" system.

44. Because Plaintiff spent 85-90% of his eight-and-a-half-hour shift on the phone or responding to e-mails, Plaintiff frequently did not have time during his shift to complete the paperwork required for each complaint.

45. As a result, Plaintiff normally arrived well before the start of his shift each day in order to complete his paperwork from the previous day and prepare for his shift.

46. In the summer months between March and September, known to Plaintiff and his colleagues as "painting season," Plaintiff worked an extra five hours or more per week at the office, in addition to his usual eight-and-a-half hour shifts, in order to complete his work.

47. This was the result of both preliminary and postliminary work.

48. In addition, in the summer months between March and September, Plaintiff worked from home anywhere from five to fifteen hours (or more) each week in order to respond to customer inquiries and to complete the necessary paperwork.

49. Defendant knew that Plaintiff was arriving at work before his shift started, and leaving after his shift ended, and working on the weekends, because Plaintiff's colleagues (other Technical Service Representatives/Technical Advisors) also normally worked these long hours, because management saw Plaintiff regularly arrive early, and because management monitored the work that Plaintiff (and the other Technical

Service Representatives/Technical Advisors) was performing not only at the office but while at home in the evenings and on the weekends.

50. Management never instructed Plaintiff, or the other Technical Service Representatives/Technical Advisors, not to work on the weekends or after hours.

51. To the contrary, Plaintiff, and the other Technical Service Representatives/Technical Advisors, was required by management to respond to customer inquiries – and management communications – on Saturdays and other non-office hours as required.

52. Defendant also knew that Plaintiff was working on the weekends because Defendant provided Plaintiff with a company laptop, which he used at night and on the weekends.

53. Whenever Plaintiff was working, whether from the office or at home, Plaintiff was required to log into Defendant's intranet portal, known as my.ppg.com.

54. Plaintiff used the portal to perform most of his job duties, and the portal tracked the time that Plaintiff was logged in.

55. Defendant used the portal to track the hours Plaintiff worked each day, including the time he spent working at home, and the work Plaintiff was performing.

56. The other Technical Service Representatives/Technical Advisors, like Plaintiff, also used my.ppg.com to perform most of their duties.

57. Defendant was also aware of extra hours Plaintiff worked in the office because Plaintiff was required to "swipe in" each day when he arrived and "swipe out" when he left.

58. As noted above, Plaintiff regularly worked in excess of 40-hour workweeks, on average 5-10 hours each week in the off-season weeks and on average from 10 to 20 hours of overtime in the "painting season" weeks.

59. Defendant did not pay overtime compensation to Plaintiff for any of the time he spent at work beyond 40 hours at the office, and Defendant did not pay overtime compensation to Plaintiff for any of the hours he worked at home.

60. Defendant did not compensate Plaintiff at one-and-one-half times his regular rate of pay for hours he worked in excess of forty hours in any workweek.

61. Defendant did not pay Plaintiff for hours worked in excess of forty hours in any workweek because Defendant classified Plaintiff as "exempt" from the overtime requirements of the FLSA and PMWA.

62. The classification was incorrect.

63. Plaintiff was not exempt under any of the relevant white collar exemptions (professional, executive or administrative).

64. Defendant knew the classification was incorrect and knew its misclassification violated the FLSA.

65. In the alternative, Defendant acted in reckless disregard of and indifference toward the FLSA by failing to make good-faith effort to evaluate Plaintiff's job duties vis-à-vis the FLSA's exemptions.

66. Plaintiff did not qualify for the executive exemption because he did not supervise other employees and did not have the authority to hire and fire employees.

67. Plaintiff did not qualify for the administrative exemption because his primary job duty did not include the exercise of discretion and independent judgment with respect to matters of significance, and because Plaintiff's work did not directly relate to the

management policies or general business operations of Defendant.

68. Plaintiff did not qualify for the professional exemption because his primary job duty did not require him to have advanced knowledge acquired by a prolonged course of specialized intellectual instruction.

## Collective/Class Action Averments

69. Plaintiff incorporates by reference paragraphs 1-68, above.

70. In the past three years Defendant has employed more than twenty individuals as Technical Advisors.[1]

71. These Technical Advisors perform the same or similar primary job duties as Plaintiff. See ¶¶ 14-24, 33-34, 37-38, 42-45.

72. These Technical Advisors, like Plaintiff, have worked from the Cranberry office since 2014 and have reported to the same management chain as Plaintiff.

73. These Technical Advisors, like Plaintiff, work standard eight-and-a-half-hour shifts.

74. These Technical Advisors, like Plaintiff, are required to complete a certain amount of paperwork each week.

75. These Technical Advisors are regularly unable to complete their requisite duties, such as the paperwork, during their regularly scheduled shifts.

76. These Technical Advisors, like Plaintiff, regularly arrive early (preliminary work) and leave late (postliminary work) in order to complete their duties.

---

[1] Technical Advisors includes the title of Technical Service Representative as well as Technical Advisor of whatever grade, e.g., Jr., Sr., different levels.

77. These Technical Advisors, like Plaintiff, regularly work at home in the evenings and on weekends in order to complete their duties.

78. These Technical Advisors use the same portal (my.ppg.com) to perform their job duties as does Plaintiff.

79. These Technical Advisors, like Plaintiff, are required to "swipe in" when they arrive at the office each day and to "swipe out" when they leave the office.

80. Management has known for at least the past three years that these Technical Advisors regularly arrive at work and perform work before the start of their shift (preliminary work), during the "lunch-breaks," after the end of their shifts (postliminary work), and at home or otherwise away from the office during the evenings and on the weekends.

81. These Technical Advisors are paid an annual salary.

82. These Technical Advisors regularly work more than forty hours per week.

83. These Technical Advisors do not receive overtime compensation[2].

84. Defendant has not compensated these Technical Advisors at one-and-one-half times their regularly rates of pay for hours they worked in excess of forty hours in a single workweek.

85. Defendant has not paid these Technical Advisors for hours worked in excess of forty hours in a single workweek because Defendant classified these Technical Advisors as

---

[2] Prior to in or about January 2016 Defendant misclassified all of its Technical Advisors as exempt. Beginning in or about January 2016 Defendant reclassified Technical Advisors other than Senior Technical Advisors as non-exempt and began paying overtime to the Technical Advisors other than the Senior Technical Advisors. This collective/class action, therefore, applies to all Technical Advisors from three years prior to the filing of this Complaint, or November 2014, until the change in classification for the Technical Advisors other than Senior Technical Advisors

"exempt" from the overtime requirements of the FLSA.

86. These Technical Advisors' duties relate directly to the employer's products, the performance of these products and the customer's satisfaction with these products.

87. These duties are not directly related to management policies or general business operations.

88. Moreover, the Technical Advisors' primary duties do not include the exercise of discretion and independent judgment with respect to matters of significance.

89. Rather, the Technical Advisors' primary duties mostly involve the application of well-established techniques, procedures or standards described in manuals and other sources provided by PPG to the Technical Advisors.

90. These Technical Advisors' primary duty also does not require advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

91. Rather, the Technical Advisors are only required to acquire and apply knowledge about PPG's products that is available from internal PPG documents (manuals, specifications, written updates) and from inquiring with internal PPG sources (like PPG's engineers and paint developers).

92. These Technical Advisors supervise <u>no one</u>.

93. These Technical Advisors do not qualify for the executive, administrative, or professional exemptions of the FLSA or PMWA.

94. These Technical Advisors are, and have been, non-exempt.

---

in or about January 2016, and to the Senior Technical Advisors from November 2014 through the present (since the Senior Technical Advisors have never been properly reclassified as non-exempt).

95. Defendant knew the classification was incorrect and knew its misclassification violated the FLSA.

96. In the alternative, Defendant has acted in reckless disregard of and indifference toward the FLSA by failing to make a good-faith effort to evaluate these Technical Advisors' job duties vis-à-vis the FLSA's exemptions.

### COUNT I:  VIOLATION OF THE FLSA
### Individual and Collective Action

97. Plaintiff incorporates by reference paragraphs 1 through 96 of this complaint as though the same were more fully set forth herein.

98. Plaintiff and all other similarly situated Technical Advisors are employees of Defendant within the meaning of the FLSA.

99. Defendant is an employer within the meaning of the FLSA.

100. Plaintiff and all other similarly situated Technical Advisors have been improperly classified as exempt from the overtime provisions of the FLSA.

101. Plaintiff and all other similarly situated Technical Advisors should have been classified as non-exempt from November 2014 through the present.

102. Plaintiff and all other similarly situated Technical Advisors have regularly worked more than forty hours per week.

103. Defendant did not pay any overtime compensation to Plaintiff and all other similarly situated Technical Advisors (of any level:  senior, junior or any other designation) when they worked more than forty hours in a single workweek prior to January 2016, and has

not paid overtime to Sr. Technical Advisors either prior to or since January 2016.

104. Defendant's failure to pay overtime to Plaintiff and all other similarly situated Technical Advisors has violated and, for Sr. Technical Advisors, continues to violate the FLSA.

105. For at least the past three years, Defendant's violations of the FLSA have been knowing, willful, and in reckless disregard of the FLSA's overtime requirements.

106. Plaintiff and all other similarly situated Technical Advisors are entitled to recover from Defendant the overtime pay improperly withheld by Defendant, plus interest, attorneys' fees, and costs.

107. Plaintiff and all other similarly situated Technical Advisors are also entitled to recover liquidated damages.

## COUNT II:  VIOLATION OF THE PMWA
### Individual and Class Action

108. Plaintiff incorporates by reference paragraphs 1 through 107 of this complaint as though the same were more fully set forth herein.

109. Plaintiff and all other similarly situated Technical Advisors are employees of Defendant within the meaning of the PMWA.

110. Defendant is an employer within the meaning of the PMWA.

111. Plaintiff and all other similarly situated Technical Advisors have been improperly classified as exempt from the overtime provisions of the PMWA: all Technical Advisors prior to January 2016 and Sr. Technical Advisors since January 2016.

112. Plaintiff and all other similarly situated Technical Advisors should have been classified as non-exempt from November 2014 through the present.

113. Plaintiff and all other similarly situated Technical Advisors have regularly worked more than forty hours per week.

114. Defendant has not paid overtime compensation to Plaintiff and all other similarly situated Technical Advisors when they worked more than forty hours in a single workweek: for all Technical Advisors before January 2016 and for Sr. Technical Advisors since January 2016.

115. Defendant's failure to pay overtime to Plaintiff and all others similarly situated Technical Advisors has violated, and for Sr. Technical Advisors continues to violate, the PMWA.

116. For at least the past three years, Defendant's violations of the PMWA have been knowing, willful, and in reckless disregard of the PMWA's overtime requirements.

117. Plaintiff and all others similarly situated Technical Advisors are entitled to recover from Defendant the overtime pay improperly withheld by Defendant, plus interest, attorneys' fees, and costs.

### PRAYER FOR RELIEF

118. WHEREFORE, Plaintiff and all other similarly situated Technical Advisors respectfully request that this Court:
    A. order Defendant to pay compensatory damages equal to the unpaid overtime compensation owed to Plaintiff and all other similarly situated Technical Advisors;
    B. order Defendant to pay liquidated damages to Plaintiff and all other similarly situated Technical Advisors;
    C. order Defendant to pay pre- and post-judgment interest as well as the litigation

  costs and reasonable attorneys' fees incurred by Plaintiff and all other similarly situated Technical Advisors; and

D. grant such further relief as the Court deems necessary and proper.

        Respectfully submitted,

          s/Joseph H. Chivers
        Joseph H. Chivers, Esq.
        PA ID No. 39184
        First & Market Building
        Suite 650
        100 First Avenue
        Pittsburgh, PA  15222-1514
        jchivers@employmentrightsgroup.com
        Tel: (412) 227-0763
        Fax: (412) 774-1994

        John R. Linkosky, Esq.
        PA ID No. 66011
        JOHN LINKOSKY & ASSOCIATES
        715 Washington Avenue
        Carnegie, PA  15106
        linklaw@comcast.net
        Tel.:  (412) 278-1280
        Fax:  (412) 278-1282

        *Counsel for Plaintiff*
        *and all others similarly situated*

Dated: November 17, 2017